UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

JOEANNA MARIE LANE,            ]
                               ]
     Plaintiff,                ]
                               ]
v.                             ]        No. 2-08-0091
                               ]        JUDGE HAYNES
                               ]
MASTERBRAND CABINETS, INC.,    ]
                               ]
     Defendant.                ]

M E M O R A N D U M

Plaintiff, Joeanna Marie Lane, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Tennessee Human Rights Act Tenn. Code Ann. § 4-21-101 et seq. ("THRA"), against the Defendant, MasterBrand Cabinets, Inc. Plaintiff asserts claims of sexual discrimination, sexual harassment and retaliatory discharge. The parties have completed discovery.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 28), contending, in sum: (1) that Plaintiff cannot establish that she suffered an adverse employment action; (2) that other similarly situated employees were treated more favorably than her on her claims of discrimination and retaliation; (3) that Plaintiff's job performance was unsatisfactorily; (4) that the Defendant had legitimate, non-discriminatory reasons to terminate Plaintiff; (5) that

Plaintiff cannot establish that her supervisor subjected her to severe and pervasive harassment; (6) that Plaintiff cannot establish a prima facie case of retaliation; and (7) that Plaintiff's claims under the THRA is statutorily barred.

In response (Docket Entry No. 42) Plaintiff asserts that genuine and material factual disputes exist, as to: (1) the disparate work conditions Plaintiff endured; (2) the daily regular teasing and failing to help when Plaintiff struggled on the fork lift; (3) the disparate disciplinary actions for conduct the male employees were allowed to do, but were purportedly unacceptable conduct for Plaintiff; (4) the failure of human resources to respond adequately to her claims of discrimination; and (5) the ultimate motivation and reason for Plaintiff's termination. Thus, Plaintiff contends summary judgment is inappropriate.

Also, before the Court is Plaintiff's motion to strike (Docket Entry No. 37) a portion of Jeania Dykes's affidavit as inadmissible.

For the reasons set forth below, the Court concludes that the Defendant's motion for summary judgment should be granted and Plaintiff's motion to strike should be denied.

## I. MOTION TO STRIKE

Plaintiff argues that portions of Jeania Dykes's affidavit (Docket Entry No. 28, Ex. 9) are hearsay or are conclusions derived from hearsay and are not based on Dykes's personal knowledge. The

2

Defendant responds that the evidence is only being offered to explain the Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff's employment. The Defendant contends that many of the contested portions of Dykes's affidavit pertain to her conclusions as the Defendant's human resources manager who was responsible for investigating allegations of inappropriate conduct and making employment decisions based on her conclusions.

The Court agrees that Dykes's affidavit is admissible and probative of the Defendant's reasons for terminating Plaintiff. The cited statements are not offered for the truth of the matter asserted, but to explain the reasons for Plaintiff's termination. Moreover, the affidavit basically recites the personnel reports (Docket Entry No. 28, Ex. 8) provided to Plaintiff at the time of the Defendant's disciplinary actions against her.

## II. FINDINGS OF FACT[1]

Plaintiff, Joeanna Marie Lane, began her employment at the Defendant's plant as a temporary employee on August 29, 2005. (Docket Entry No. 48, Plaintiff's Response to Defendant's Statement

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed <u>infra</u>, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

3

of Undisputed Facts, at ¶ 5). Plaintiff was hired by the Defendant as a production employee on February 6, 2006. Id. at ¶ 5. As wtih all new employees, Plaintiff was originally employed as an offbearer, essentially an employee who stacks wood, in the rough mill. Id. at ¶ 6.

In February 2006, Plaintiff bid upon and was awarded a cross-training position to become a 30K Lift Operator. Id. at ¶ 7. After she became cross-trained on the 30K lift in April, 2006, Plaintiff was qualified to substitute for a regular 30K Lift Operator, and in August 2006, Plaintiff was awarded the full-time position of 30K Lift Operator on third shift. Id. at ¶¶ 9-10.

Randy Phipps, the Third Shift Supervisor, was Plaintiff's direct supervisor and the highest ranking member of management on third shift. Id. at ¶ 11. Although Greg Vaughn primarily worked first shift as lumber yard supervisor, he supervised all 30K lift operators. Id. at ¶ 12. Because there was not always a full shift of work for a 30K Lift Operator on third shift, Plaintiff was expected to work in the Rough Mill when her duties as a 30K Lift Operator were not needed. Id. at ¶ 13.

The Defendant's Conduct Policy provides that if an employee receives three written warnings within a 12 month period it will result in the termination of employment, though there may be situations where acceleration of the process is warranted. Id. at ¶ 19. The Conduct Policy provides that certain offenses, such as

4

insubordination (defined as "willful refusal or failure to perform an assigned task or intentional disregard or failure to follow established procedures") warrant an immediate final written warning or termination of employment. Id. at ¶ 22. Jeania Dykes, the Human Resources Manager at the plant from May 2006 to March 2008, routinely and consistently terminated employees who accumulated three (3) violations of the Conduct Policy within a twelve (12) month period. Id. at ¶¶ 19, 21. Plaintiff received a copy of the Conduct Policy at a Company meeting on January 17 or 18, 2007. Id. at ¶ 23.

On September 5, 2006, Lane was issued a formal counseling for a safety violation and failure to follow instructions. Id. at ¶ 30. Plaintiff was instructed to use 4x4s to span the entire length of lumber packs when stacking lumber because using the wrong length 4x4s would create an unsafe condition. Id. at ¶¶ 31-32. However, in late August, Plaintiff unloaded at least one load of lumber and stacked it on 4x4s that did not span the entire width of the packs. Id. at ¶ 33. As a result, Vaughn gave Plaintiff a counseling session. Id. at ¶ 35. Plaintiff admits this disciplinary action was warranted. Id. at ¶ 36.

On May 16, 2007, Plaintiff was involved in an incident involving Dora Evans, another employee, where Plaintiff reported to management that Evans told her to "get the hell out of her way" and that the following day, Evans hit her with a piece of wood while

5

she was offbearing.  Id. at ¶ 37.  Dykes investigated Plaintiff's allegations and concluded that Plaintiff's allegations were untrue. Id. at ¶¶ 38-39.  On June 1, 2007, Plaintiff was issued a written warning for making unfounded allegations against another employee and was warned that additional behavior of this type would result in further disciplinary action, including termination of her employment.  Id. at ¶¶ 37, 40-41.  Vaughn was not involved in investigating this incident or in the decision to discipline Plaintiff, nor does Plaintiff believe that the written warning she received for this incident was related to her gender.  Id. at ¶¶ 42-43.

On May 18, 2007, Plaintiff was transferred to third shift 30K Lift Operator in the lumber yard from offbearer in the Rough Mill. Id. at ¶ 46.  According to the Defendant, Vaughn informed Plaintiff that her duties on third shift would not include unloading trucks, but Plaintiff disregarded Vaughn's instruction and on May 20, 2007, unloaded a truck on third shift.  Id. at ¶¶ 48-49.  Dykes concluded that Plaintiff violated the conduct policy by failing to follow Vaughn's direct instructions and issued Plaintiff a final written warning on June 1, 2007, for her refusal to follow a direct instruction from her supervisor.  Id. at ¶¶ 50-51.  Plaintiff was again advised on June 1, 2007, that any additional violations would result in further discipline, including termination of her employment, under the Defendant's conduct policy.  Id. at ¶ 53.

6

Plaintiff disputes this account and asserts that Phipps instructed Plaintiff to unload trucks and that no one told her not to unload trucks. (Docket Entry No. 43, Lane Affidavit at ¶ 6). On June 13, 2007, Plaintiff filed a charge of discrimination with the EEOC. (Docket Entry No. 28, Plaintiff Deposition at p. 262).

Plaintiff was later charged with two additional disciplinary infractions. In one instance, Dykes concluded Plaintiff refused to follow direct instructions from Tina Nealey, the command center operator, and in another, Dykes concluded Plaintiff made false accusations against Nealey. (Docket Entry No. 48 at ¶¶ 14, 56-57). Both of these infractions are disputed by Plaintiff.

Nealey directed Plaintiff's activities when Plaintiff worked in the Rough Mill. Id. at ¶ 14. According to the Defendant, on July 30, 2007, Plaintiff asked Nealey if Plaintiff could use the 5K fork lift to load lumber on to the lift table in the Rough Mill because the 30K fork lifts were not operational. Id. at ¶ 61. Nealey instructed Plaintiff not to use the 5K lift for that purpose until Nealey checked with Stuart Roberson, an Engineer, to see if the 5K lift could be safely used for this purpose. Id. at ¶ 63. When Nealey went to check with Roberson, Lane ignored Nealey's instruction and began using the 5K fork truck to load the lift table. Id. at ¶64.

Plaintiff denies Nealey's account and alleges that both Nealey and Roberson advised her that she could use the 5K lift. (Docket

7

Entry No. 43, Lane Affidavit at ¶¶ 8-9). In her deposition, Plaintiff testified that she believed her employment was terminated because she used the 5K forklift. (Docket Entry No. 48 at ¶ 95). Plaintiff is unaware of any other employees who have been involved in a similar disciplinary situation. Id. at ¶ 96.

While the Defendant was investigating the July 30, 2007 incident, Plaintiff reported to Phipps that Nealey approached her in a hostile manner and yelled at her in a raised voice on August 1, 2007. Id. at ¶ 70. Plaintiff reported that she had asked an employee why Nealey had moved another employee in her department. Id. at ¶ 71. Dykes investigated the incident, interviewing numerous employees, and concluded based on her investigation, that Plaintiff had second guessed Nealey's decision to move an employee to the other side of the Rough Mill and determined Plaintiff's allegations to be false. Id. at ¶¶ 81-84. Based on the incidents on July 30, 2007 and August 1, 2007, and Plaintiff's previous Written Warnings, Dykes, after consulting Plant Manager Mike Nuss, suspended Plaintiff's employment on August 16, 2007, pending the conclusion of its investigation. Id. at ¶ 85. Later after consulting Nuss, Dykes terminated Plaintiff on September 7, 2007. Id. at ¶ 90.

Plaintiff acknowledges that Dykes did not at any time discriminate against her based on her gender. Id. at ¶ 52.

8

Plaintiff also believes that the only employee who discriminated against her because of her gender was Vaughn.  _Id_. at ¶ 94.

For her discrimination claims, Plaintiff allegations against Vaughn and others lack material factual support.  Plaintiff alleges that as both a temporary and full time employee her bathroom breaks were timed by Brad Hardman and Brenda Roysden, both of whom were supervisors.  (Docket Entry No. 53, Defendant's Response to Plaintiff's Statement of Facts, at ¶ 22).  According to Plaintiff, none of the male employees had their bathroom breaks timed.  _Id_. at ¶ 23.

Plaintiff believes that 30K Lift Operators, Jeff Aric and Tony Richardson, were treated more favorably than she.  _Id_. at ¶ 97. Plaintiff admits that Aric and Richardson each had 14 or more years experience as 30K lift operators.  _Id_. at ¶ 98.  Plaintiff alleges that when she was being trained other lift drivers would not help her and laughed at her.  (Docket Entry No. 53 at ¶¶ 11-13, 27). Plaintiff alleges that the male employees would help each other, but not her.  _Id_. at ¶ 28.  Vaughn helped Aric and Richardson when they needed help, but he would not help her.  _Id_. at ¶ 31. Plaintiff went to Vaughn to complain about her treatment and the lack of assistance she received from the male lift drivers, and he merely told her to go to Richardson for help.  _Id_. at ¶ 30. Plaintiff reported to Manager Tommy Byrd and Vaughn that she felt she was being discriminated because of her gender.  _Id_. at ¶ 34.

9

Plaintiff also alleges that after obtaining the job as a 30K lift operator, Plaintiff was still timed on some unknown timing standards for stacking lumber, standards the male employees did not have to follow. <u>Id</u>. at ¶ 40.

Vaughn also made the statement he did not want women working in the lumber yard on at least two or three occasions in front of an employee, Robert Jones, and also made the statement in response to women arguing in the lumber yard "that's what you get when you have a bunch of women working for you." <u>Id</u>. at ¶¶ 8-9. Darrel Lane, Plaintiff's husband, also worked at the Defendant's plant, and heard Vaughn state that "if (he) had anything to do with it, there would be no women in the lumber yard." <u>Id</u>. at ¶ 17.

Plaintiff also alleges that on one instance, Vaughn stood right behind the plaintiff as she was bending over cleaning and when she raised up she could feel his breath on her neck. <u>Id</u>. at ¶ 43; Docket Entry No. 28, Plaintiff Deposition at p. 96. Vaughn then asked Plaintiff to come to the office where he told her she had to be more safe and more careful in the lumber yard. <u>Id</u>. at ¶ 44. Plaintiff asserts that she was very uncomfortable by this meeting because, although he did not specifically say anything, Vaughn's tone and demeanor led her to believe he wanted to "do more" and she felt she would not receive such harsh treatment if she would do more with Vaughn. <u>Id</u>. at ¶ 45.

10

Plaintiff also alleges that Vaughn and Roysden would at times watch her and that Vaughn did not closely watch the male employees as he did her. Id. at ¶¶ 18, 69. Further, Plaintiff alleges that after Plaintiff made a charge of discrimination, she was treated differently by Nealey and Vaughn, as Vaughn would watch Plaintiff more. Id. at ¶¶ 72-73.

## III. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure
> provides that summary judgment "shall be rendered
> forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law." By its
> very terms, this standard provides that the mere

11

existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But</u> <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

12

> Of course, a party seeking summary judgment always bears
> the initial responsibility of informing the district
> court of the basis for its motion, and identifying those
> portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact. . . .
> [W]e find no express or implied requirement in Rule 56
> that the moving party support its motion with affidavits
> or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479

13

(6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a

14

fair-minded jury could return a verdict for the plaintiff
on the evidence presented. The mere existence of a
scintilla of evidence in support of the plaintiff's
position will be insufficient; there must be evidence on
which the jury could reasonably find for the plaintiff.
The judge's inquiry, therefore, unavoidably asks whether
reasonable jurors could find by a preponderance of the
evidence that the plaintiff is entitled to a verdict --
"whether there is [evidence] upon which a jury can
properly proceed to find a verdict for the party
producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis

added).

> It is likewise true that:

> In ruling on [a] motion for summary judgment, the court
> must construe the evidence in its most favorable light in
> favor of the party opposing the motion and against the
> movant. Further, the papers supporting the movant are
> closely scrutinized, whereas the opponent's are
> indulgently treated. It has been stated that: `The
> purpose of the hearing on the motion for such a judgment
> is not to resolve factual issues. It is to determine
> whether there is any genuine issue of material fact in
> dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427

(6th Cir. 1962) (citation omitted). As the Court of Appeals

stated, "[a]ll facts and inferences to be drawn therefrom must be

read in a light most favorable to the party opposing the motion."

Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role

in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which
> portion of the record the nonmoving party relies, nor is
> it obligated to wade through and search the entire record
> for some specific facts that might support the nonmoving
> party's claim. Rule 56 contemplates a limited

15

marshalling of evidence by the nonmoving party sufficient
to establish a genuine issue of material fact for trial.
This marshalling of evidence, however, does not require
the nonmoving party to "designate" facts by citing
specific page numbers.  Designate means simply "to point
out the location of."  <u>Webster's Third New InterNational
Dictionary</u> (1986).

Of course, the designated portions of the record must be
presented with enough specificity that the district court
can readily identify the facts upon which the nonmoving
party relies; but that need for specificity must be
balanced against a party's need to be fairly apprised of
how much specificity the district court requires.  This
notice can be adequately accomplished through a local
court rule or a pretrial order.

<u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989).

Here, the parties have given some references to the proof upon

which they rely.  Local Rules 56.01(b)-(d) require a showing of

undisputed and disputed facts.

In <u>Street</u>, the Court of Appeals discussed the trilogy of

leading Supreme Court decisions, and other authorities on summary

judgment and synthesized ten rules in the "new era" on summary

judgment motions:

> 1.   Complex cases are not necessarily inappropriate for
> summary judgment.
>
> 2.   Cases involving state of mind issues are not
> necessarily inappropriate for summary judgment.
>
> 3.   The movant must meet the initial burden of showing
> "the absence of a genuine issue of material fact" as to
> an essential element of the non-movant's case.
>
> 4.   This burden may be met by pointing out to the court that
> the respondent, having had sufficient opportunity for
> discovery, has no evidence to support an essential element of
> his or her case.

16

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present

17

sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### A. SEXUAL HARASSMENT CLAIM

Title VII provides that it is unlawful for an employer to discriminate against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). In a disparate treatment case of sex discrimination, a plaintiff is "required to demonstrate that the adverse employment decision would not have been made 'but for' her sex." Simon v. City of Youngstown, 73 F.3d 68, 70 (6th Cir. 1995) (citation and internal quotes omitted). A plaintiff may prove discrimination by either present direct evidence, or circumstantial evidence.

Absent direct evidence of discrimination,[2] Title VII claims are subject to the McDonnell Douglas three-part, burden-shifting analysis: (1) the plaintiff must establish a prima facie case of discrimination; (2) the employer must articulate some legitimate,

---

[2]It should be noted that the McDonnell Douglas formulation for establishing a prima facie case of discrimination is inapplicable to direct evidence cases. As one court stated, "[d]irect evidence and the McDonnell Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Blalock v. Metal Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985).

18

nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was pretextual. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); accord <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981); <u>Kent County Sherriff's Ass'n v. Kent County</u>, 826 F.2d 1485, 1492 (6th Cir. 1987) (citing <u>McDonnell Douglas and Burdine</u>). The burden of persuasion remains with the plaintiff at all times. <u>Canitia v. Yellow Freight Sys., Inc.</u>, 903 F.2d 1064, 1066 (6th Cir. 1990).

To establish a <u>prima</u> <u>facie</u> case of sexual harassment or a sexually hostile work environment under Title VII, the plaintiff must prove: (1) that she is a member of a protected class; (2) that she were subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment created a hostile work environment; and (5) that the Defendant failed to take reasonable care to prevent and correct any sexually harassing behavior. <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 462-63 (6th Cir. 2000) (affirming summary judgment despite proof of "a litany of perceived slights and abuses" including sexually offensive language). To be actionable, sexual harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. <u>Id</u>. The Court is also required to consider if the plaintiff engaged in similar conduct. <u>Id</u>. Moreover, "the law recognizes that non-sexual conduct may be illegally sex-based where it evinces 'anti-female animus, and therefore could be found

19

to have contributed significantly to the hostile environment.'" Williams v. General Motors Corp., 187 F.3d 553, 565 (6ᵗʰ Cir. 1999) (citation omitted).

Once these elements are proven, "[t]he burden . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reasons for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. "[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for [its actions.]" Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 255 (1981). The defendant "need not persuade the [trier of fact] that it was actually motivated by the proffered reasons," 450 U.S. at 254, but "only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. at 257. The defendant's burden is, thus, one of production; not persuasion. Id. at 254-55. Although the burden of production shifts to the defendant, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her] remains at all times with the plaintiff.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (citation omitted).

Once the defendant meets this burden, the plaintiff must show that the employer's proffered reason is pretextual. Id. "It is not enough . . . to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination."

20

Id. at 519 (emphasis omitted). But "[a] plaintiff does not need to introduce additional evidence of discrimination to prevail on the merits." Kline v. Tennessee Valley Auth., 128 F.3d 337, 347 (6th Cir. 1997). Discrimination can be found once a prima facie case is established along with the disbelief of the proffered reasons for the adverse employment action. Id. To challenge the employer's explanation for an adverse employment action, the plaintiff must show, by a preponderance of the evidence, "either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996).

The Supreme Court in Hicks made clear that "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" 509 U.S. at 518 (citation omitted). Moreover, the Court held that "it is not enough . . . to dis believe the employer; the fact finder must believe the plaintiffs explanation of intentional discrimination." Id. at 519 (emphasis in original).

Under Title VII, a "workplace [that] is permeated with 'discriminatory intimidation, ridicule, and insult,' and that is 'sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment'"

21

violates the Act.  <u>Harris v. Forklift Systems</u>, Inc., 510 U.S. 17, 21 (1993) (quoting <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 65, 67 (1986)).  For a hostile environment claim under Title VII, the plaintiff must establish more than a "mere utterance of an . . . epithet which engenders offensive feelings in an employee," to be actionable.  <u>Id</u>.  As the Supreme Court further explained that:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

<u>Id</u>. at 223.

The harassing acts must be "either in concert or with a regularity that can reasonably be termed pervasive."  <u>Lopez v. S.B. Thomas, Inc.</u>, 831 F.2d 1184, 1189 (2nd Cir. 1987).  Plaintiff must show that a reasonable person would consider the offensive conduct pervasive and plaintiff must subjectively experience the offensive conduct.  <u>Harris</u>, 510 U.S. at 21-22.  Yet, the Sixth Circuit explained that sex-based comments need not be directed at a plaintiff in order to constitute conduct violating Title VII.  <u>Black v. Zaring Homes, Inc.</u>, 104 F.3d 822, 826 (6th Cir. 1997).  Tennessee courts apply these same principles to THRA claims.  <u>Campbell v. Florida Steel Corp.</u>, 919 S.W.2d 26, 31 (Tenn. 1996).

22

The only allegation of a sexual nature is Plaintiff's allegation that Plaintiff felt Vaughn's breath on her neck when she stood up and that his tone and demeanor made her believe that he wanted "to do more." This alleged conduct is too vague and speculative and does not constitute severe or pervasive.

Moreover, Plaintiff has failed to provide sufficient evidence that any non-sexual conduct by Vaughn demonstrated "anti-female animus." The alleged statements made by Vaughn were not directed at Plaintiff which diminishes their severity. See Ladd v. Grand Trunk Western R.R., Inc., 552 F.3d 495, 501 (6th Cir. 2009). Further, Jones testified that he heard Vaughn make those statements a couple of years after Jones started his employment, which would have been seven or eight years prior to Plaintiff's employment. (Docket Entry No. 44 at pp. 8, 26). It is unclear when Plaintiff's husband heard the alleged statements. Also, Plaintiff alleges that she believes that only Vaughn discriminated on the basis of her gender. While she complained that Aric and Richardson would not help her, Plaintiff does not allege they did this on the basis of her sex.

In construing the totality of the circumstances, the Court concludes that Plaintiff has failed to submit any reliable evidence supporting her claim that she experienced sexual harassment that was sufficiently severe or pervasive that altered the conditions of her employment.

## B. SEX DISCRIMINATION

A plaintiff may establish a <u>prima facie</u> showing of disparate treatment under Title VII with proof: (1) that she is member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was treated differently than similarly-situated employees outside of the protected class for the same or similar conduct. <u>Abeita v. Transamerica Mailings, Inc.</u>, 159 F.3d 246, 253 (6th Cir. 1998).

The Defendant asserts that Plaintiff did not suffer an adverse employment action because of her gender.

> An "adverse employment action" has been defined by the Sixth Circuit as a materially adverse change in the terms and conditions of employment. An adverse employment action is more than a mere inconvenience or an alteration of job responsibilities. . . . Instead, examples of an adverse employment action include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, and suspensions.

<u>Butler v. Potter</u>, 345 F. Supp.2d 844, 854 (E.D. Tenn. 2004) (citing <u>Smith v. City of Salem, Ohio</u>, 378 F.3d 566, 575-76 (6th Cir. 2004) (citation omitted).

The Court agrees. It is undisputed that Vaughn was not the supervisor who terminated Plaintiff. Further, of the five disciplinary reprimands that Plaintiff received, Vaughn was involved in only two. Plaintiff admits that she was properly disciplined for failing to follow Vaughn's instructions to use 4x4s

24

to span the entire length of lumber packs when stacking lumber. As to the second instance involving Vaughn, Plaintiff denies that Vaughn instructed her not to unload the trucks. This dispute is immaterial as Plaintiff was not terminated, suspended or experienced any other "materially adverse change in the terms and conditions of employment" as a result of this disciplinary action. Plaintiff subsequently committed two other disciplinary infractions in which Vaughn was not involved that led to her termination.

The Defendant also contends that there is not any evidence that the Defendant treated similarly situated males differently or more favorably than Plaintiff. "[T]o be considered 'similarly situated' in the disciplinary context, 'the plaintiff must show that the 'comparables' are similarly-situated *in all respects*.'" Noble v. Brinker Inern., Inc., 391 F.3d 715, 728-29 (6th Cir. 2004) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)) (emphasis in original). "Generalized allegations unsupported by evidence are insufficient to meet the plaintiff's burden." Id. at 731.

For this element, Plaintiff makes generalized allegations that are unsupported by the evidence. Plaintiff asserts that Aric and Richardson were treated more favorably than she. However, Aric and Richardson each had 14 or more years experience as 30K lift operators while Plaintiff had been a 30K Lift Operator for approximately 1 year at the time of her termination and for only a

month when she asserts to have been treated differently. Further, Plaintiff does not contend that Aric and Richardson failed to span the entire length of 4 x 4s when stacking bundles, conduct for which Plaintiff was disciplined, but rather she contends they failed to place a certain number of 4 x 4s on the top bundle in a stack, a totally different conduct. Similarly, Plaintiff alleges that other employees and even supervisors used the 5K fork lift to load lumber on to the lift table for which they were not disciplined. Yet, Plaintiff was not disciplined for using the 5K fork lift in this manner, but was disciplined for not following Nealey's instructions.

Plaintiff also asserts that her bathroom breaks were timed by Hardman and Roysden, but does not present any factual evidence for this assertion. Plaintiff offers only her conclusory opinion based upon Hardman looking at his watch. After a motion for summary judgment is filed, "[p]laintiff cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Brnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1389 (6th Cir. 1993) Likewise, Plaintiff asserts that she was timed when loading and unloading trucks and that she never saw any of the male 30K lift operators being timed. Other than her own conclusory opinion, the record does not reflect that she was timed or that the male 30K

26

lift operators were not timed. Further, Plaintiff ignores the undisputed fact that each of the males had at least 14 years of experience as 30K lift.

Similarly, Plaintiff alleges that her supervisor's observation of her on the assembly line, constitute sex discrimination. Plaintiff does not present any admissible evidence except for her mere speculation that she was being singled out or that this alleged conduct was discriminatory in nature.

Lastly, Plaintiff alleges that after she was moved from the Lumber Yard to the Rough Mill, less qualified males were given jobs in the Lumber Yard. Plaintiff's assertion lacks any factual support. Further, Plaintiff fails to show how such transfer constituted an adverse employment action.

### C. RETALIATION

To establish a prima facie showing of retaliation, a plaintiff must prove: (1) that she engaged in an activity protected by Title VII; (2) that the exercise of her civil rights was known to the defendant; (3) that thereafter the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not

27

have been taken had the plaintiff not filed a discrimination action." Id. Temporal proximity alone is insufficient to establish a causal connection. Id. at 566-67.

Plaintiff was involved in two disciplinary violations after the filing of her EEOC charge. As stated previously, Vaughn was not involved in either of these incidents, only Nealey. Plaintiff has failed to establish that Nealey had any knowledge of these charges. In her deposition, Nealey admitted that she did not know for sure that Nealey was aware, but based her conclusion on the fact that she observed Vaughn and Nealey "talking a couple of time" and "then looking at [her]." (Docket Entry No. 28, Ex. 4 at p. 183). However, Plaintiff now asserts in her affidavit that she recalls a meeting at which Nealey was present when Lane mentioned that she had been advised by the EEOC not to sign anything. (Docket Entry No. 43 at ¶ 14). This evidence is inadmissible. "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986).

In any event, even if Nealey had knowledge of Plaintiff's EEOC charge, Plaintiff does not allege any specific conduct by Nealey except for Plaintiff's vague and conclusory opinion. Further, Dykes was the one who investigated the incidents involving the 5K fork lift and the confrontation with Nealey. Dykes was the one who

28

terminated Plaintiff based on her fifth disciplinary infraction and Plaintiff has failed to present any evidence establishing any pretext on the part of Dykes or any retaliatory animus. "'[T]he anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.'" Williams v. AP Parts, Inc., 252 F. Supp.2d 495, 498 (N.D. Ohio 2003) (quoting Scroggins v. Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir.2000)) (citation omitted). Accordingly, Plaintiffs claims are without merit.

Based upon the dismissal of Plaintiff's Title VII claims, Plaintiff's THRA claim is dismissed without prejudice for lack of jurisdiction. Wal-Juice Bar, Inc. v. Aleut, 899 F.2d 1502, 1504 (6th Cir. 1990).

### IV. CONCLUSION

Accordingly, the Defendant's motion for summary judgment (Docket Entry No. 28) should be granted, and Plaintiff's motion to strike (Docket Entry No. 37) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _18th_ day of May, 2010.

 

 

WILLIAM J. HAYNES, JR.
United States District Judge

29